**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUAN A. JIRAU,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09 C 2111** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Juan A. Jirau ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Title XVI Supplemental Security Income ("SSI"). The parties raise the following issues: (1) whether new and material evidence in the form of a subsequent award of benefits and accompanying mental health records establishes Claimant had disabling mental retardation that requires reversal and remand; and (2) whether the ALJ committed reversible error in not calling a medical expert to resolve inconsistencies in Claimant's mental health records. The Court held an oral argument on May 13, 2010. Dkt. 38. For the following reasons, the Court affirms the ALJ's decision and grants the Commissioner's motion for summary judgment.

# I. BACKGROUND FACTS

## A.     Procedural History

Claimant initially received Title II Disability Insurance Benefits from August 5, 1987 to February 24, 1994 due to upper extremity numbness and a left arm fracture incurred in a 1987 motorcycle accident.  R. 28-29, 104-05, 718-20.  On May 25, 2001, Claimant filed a subsequent application for SSI benefits, alleging a disability onset date of July 1, 1994 due to a herniated disc, pinching nerve, and chronic pain.  R. 284-86.  The Social Security Administrator ("SSA") denied the claim initially and upon reconsideration.  R. 144, 151.

Claimant requested a hearing before an Administrative Law Judge ("ALJ"), and two hearings subsequently took place before ALJ Helen Cropper on September 10, 2003 and February 3, 2004.  R. 705-99, 800-88.  The ALJ issued a decision on May 17, 2004, finding Claimant was not disabled under the Social Security Act.  R. 101-43.  Specifically, the ALJ found Claimant's date last insured ("DLI") for disability benefits was June 30, 1998, and Claimant's impairments did not meet or medically equal one of the listed impairments.  R. 143.  Claimant filed for a review of the ALJ's decision to the Appeals Council, who on July 22, 2005 remanded the case back to the ALJ for further proceedings with specific instructions to give further consideration to Claimant's alleged mental impairments.  R. 232, 234-45, 247-49.

ALJ Cropper held a supplemental hearing on September 19, 2006. R. 889-984. On February 1, 2007, ALJ Cropper issued a written decision finding that Claimant was not disabled. R. 25-88. Specifically, the ALJ found Claimant's DLI was December 30, 1995, he was able to perform "sedentary work," and there were a significant amount of jobs in the national economy that he could perform. R. 25-88. On February 2, 2009, the Appeals Council denied review of ALJ Cropper's second decision. R. 7-9. ALJ Cropper's February 1, 2007 decision is therefore the one currently before this Court for review.

While review of ALJ Cropper's February 1, 2007 decision was pending before the Appeals Council, Claimant filed a subsequent application for SSI on February 12, 2007. Cx.[1] A. Following denial of this latest application, Claimant requested another hearing in front of an ALJ. On August 7, 2008, ALJ Michael R. McGuire issued a written decision finding Claimant was disabled under the Social Security Act as of February 12, 2007. Cx. A at 4. Specifically, ALJ McGuire found the severity of Claimant's "mental retardation, depression and degenerative disc disease of the lumbar spine," met the listing criteria in Section 12.05(c) of 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* at 5. In his decision, ALJ McGuire relied on an April 19, 2007 psychological consultative examination report and a May 2, 2007 State agency Psychiatric Review Technique Form. Neither of these records were before ALJ Cropper, nor are they present in the record before this Court.

---

[1]Citations to "Cx. A" refer to Claimant's Appendix of Exhibits attached to his brief.

**B.      Hearing Testimony**

     **1.      September 10, 2003 Hearing**

        **Juan Jirau - Claimant**

At the time of the hearing, Claimant was forty-one years old and unmarried. R. 729. He testified that he completed school through eighth or ninth grade but never graduated from high school. R. 733. He resides with his fiancee's parents, the Jacintos, who support him financially. R. 734-35, 747. Claimant's most recent employment was as a doorman at a neighborhood bar on the weekends for four hours per night. R. 731, 787-88. Claimant also testified to sporadic previous work at a garage, as a dishwasher, as a valet, at McDonald's, and installing alarm systems. R. 738-44, 772. Otherwise, his last employment was in 1991 as a sous chef at T.G.I. Friday's. R. 737-38. Claimant testified he cannot work now because of constant pain in his leg, back, and arms, as well as lack of sleep. R. 747, 749-54.

Additionally, Claimant stated he suffers from depression and has attempted suicide. R. 765-66. Claimant spoke with a social worker, who recommended Prozac, but Claimant refused the prescription. R. 766-67. Claimant had not seen a psychiatrist as of this hearing. R. 767, 824.

     **2.      February 3, 2004 Hearing**

The ALJ held supplemental proceedings on February 3, 2004 in order to take testimony of four witnesses, including two expert witnesses. R. 802.

### a.     Juan Jirau - Claimant

Claimant testified that his condition had become worse since the September 10, 2003 hearing, and he had not worked, been to school, traveled, or played pool.  R. 827.  Claimant also testified to having headaches every other day.  R. 815.  Additionally, a social worker had recommended Zoloft, but Claimant refused due to the side effects.  R. 824.

### b.     Phyllis Jacinto - Claimant's Witness

Phyllis Jacinto ("Ms. Jacinto") testified that she was Claimant's fiancee and had known him for four years, although they had a twenty-year-old daughter together.  R. 828.  At the time of the hearing, Ms. Jacinto lived in her parent's basement with Claimant.  R. 828-29.  She testified that Claimant stayed in bed most of the day due to pain, but did get up to walk a little.  R. 831.  Ms. Jacinto said Claimant cannot stand for long periods and items frequently fall out of his hand.  R. 833-35.  She also confirmed that Claimant has headaches every other day but does not take medicine to treat them.  R. 841.

Ms. Jacinto believed that Claimant was depressed because he could not provide for the family like he wants to, had trouble sleeping, and did not enjoy the things he used to do.  R. 838.  Ms. Jacinto said she was aware of Claimant's suicide attempts.  R. 839-40.  Ms. Jacinto helped Claimant fill out his Social Security applications because he had difficulty writing.  R. 843-44.

### c.     Dr. Irwin Rich - Medical Expert ("ME")

After reviewing Claimant's medical record, the ME, an orthopedic specialist, opined

that Claimant suffers from impairments in his left upper extremity. R. 806, 857-59. The ME

testified that Claimant may be able to lift ten pounds with his right hand only, and could

stand and walk two hours in an eight-hour work day if he had a sit and stand option. R. 860,

863. The ME disagreed with the report of orthopedic specialist Dr. James Elmes, who

examined Claimant at the ALJ's request. R. 862. The ME opined that Claimant was more

limited in his ability to lift and carry than Dr. Elmes found; however, he did not find that

Claimant met a listed impairment. R. 464, 859-60, 862.

### d.     Grace Gianoforte - Vocational Expert

After reviewing Claimant's employment history, and assuming, at the ALJ's

instruction, that Claimant had the Residual Functional Capacity ("RFC")[2] to perform a full

range of work at the sedentary[3] level, the VE determined that there were five occupations

available in the national economy Claimant could perform. R. 877. These included order

clerk (1,500 positions), clerical sorter (2,500 positions), checker (2,500 positions), parking

lot cashier (1,500 positions) and surveillance monitor (1,500 positions). R. 878-80. The VE

---

[2]Residual Functional Capacity determines the extent that a claimant can do despite the effects of his impairments. 20 C.F.R. § 404.1545(a).

[3]Sedentary work includes exerting up to ten pounds of force occasionally and occasionally lifting and carrying small objects. 20 C.F.R. § 1567(a). It involves sitting most of the time, but may require walking or standing. *Id.* The ALJ also included restrictions that Claimant should never climb ladders, ropes scaffolds, and could occasionally climb ramps or stairs. He could also occasionally stoop, kneel, crouch or crawl, and occasionally grasp with his left hand.

noted that Claimant would have to be productive 80 percent of the workday with no lapses in concentration, persistence, and pace.  R. 882.  Lack of productivity for more than 20 percent of the workday would place Claimant beyond the threshold for competitive employment.  *Id.*

### 3.    September 19, 2006 Hearing Testimony Following Appeals Council Remand

#### a.    Juan Jirau - Claimant

At the time of this hearing, Claimant was 44 years old.  R. 918.  Claimant testified he lost 36 pounds since his last hearing and attributed the weight loss to depression, but had still not been treated.  R. 908-09.  Claimant testified that he will not go to see a mental health provider because he feels embarrassed and his public aid will not cover it.  R. 907.

Claimant said his pain used to be a four out of ten and is now closer to eight or nine. R. 930.  Claimant testified he cannot move his left forearm and he had been going to physical therapy.  R. 933.  He also testified to shooting pain in both legs.  R. 935.

When the ALJ asked about his school and work history, Claimant testified to having been in special education classes because he was "not smart" and had behavior and conduct problems at school.  R. 940-41, 962.

#### b.    Michelle Peters - Vocational Expert

The Vocational Expert ("VE"), Michelle Peters, described Claimant's education at the eighth grade level.  R. 969.  Because Claimant had no relevant work experience in the fifteen years preceding the hearing, the ALJ asked the VE to assume a series of hypotheticals.  R.

970.  The VE was to assume Claimant can lift and carry 22 pounds occasionally and up to twenty pounds frequently; can stand and/or walk for up to two hours in a work day; can sit with typical breaks; cannot use the left upper or either lower extremity for repetitive pushing or pulling against resistance; should never climb ladders, ropes, or scaffolds; should never kneel, crouch or crawl; can occasionally balance, stoop, or climb ramps or stairs; can occasionally reach overhead; has normal ability to feel or do fine manipulation with either hand, but decreased ability to grasp with left hand; and should not be exposed to extremes of temperature, humidity, vibration, unprotected heights, or unguarded hazardous equipment. R. 970.  The VE opined that such an individual would be limited to assembly-type manufacturing positions, and there would be no more than 1,500 positions available.  R. 970-71.  If the Claimant only had a slight reduction in ability to grasp with the left upper extremity, then 3,000 positions would be available.  R. 972-73.

However, the VE testified that if the Claimant were limited to sedentary work, there would be about 800 positions he could perform. R. 971.  Further, if Claimant required a cane to walk farther than fifty feet, there would be 400 positions available.  R. 972.  Finally, if Claimant was off task more than ten percent of the work day, it would eliminate any substantial gainful activity.  R. 975.

## C.  Medical Evidence

### 1.  Evidence of Physical Impairment

The administrative record contains numerous records related to Claimant's alleged physical impairments, however, Claimant's counsel affirmed at oral argument that Claimant waived any argument that the ALJ erred in her physical RFC assessment. The Court will therefore focus on that evidence relevant to Claimant's alleged mental impairments.

### 2.  Evidence of Mental Impairment

#### a.  Bernard Richard - Licensed Clinical Social Worker

Bernard Richard, LCSW, ("Mr. Richard") met with Claimant beginning November 24, 2003.  R. 529.  On the initial visit Mr. Richard found clinical manifestations "suggestive of a major depressive disorder."  *Id*.  Signs of the disorder included self-imposed isolation, feelings of hopelessness and worthlessness, feelings of sadness, and loss of interest or pleasure in activities.  *Id*.  Mr. Richard reported Claimant refused to take Zoloft because he did not "believe in taking too much medication."  *Id*.

At a December 8, 2003 appointment, Mr. Richard noted Claimant was focused, spontaneous and interactive with no signs of anxiety or depression.  R. 528.  On December 22, 2003 Mr. Richard made note of Claimant's increased pain.  R. 527.

Mr. Richard signed a mental RFC evaluation, diagnosing Claimant with major depressive disorder.  R. 532-34.  Mr. Richard found Claimant was extremely limited in his ability to understand, remember and carry out technical or complex job instructions and interact appropriately with supervisors and coworkers in a competitive job setting.  R. 532.

Claimant had marked limitations in his ability to carry out simple job instructions. *Id.* Claimant also had marked limitations in his ability to deal with the public and maintain sustained concentration and attention. R. 533. Mr. Richard found Claimant had extreme limitations in responding appropriately to customary work pressures. *Id.*

Mr. Richard opined that Claimant's mental status was likely to result in decompensation under the stress of a competitive full-time job because of emotional ability and environmental stressors. R. 533. Mr. Richard also noted Claimant could not likely engage in part-time employment because his mental status was fragile. R. 533. Claimant was diagnosed with DSM-IV 296.30 Major Depressive Disorder. R. 534.

### b. Winston Hall - Psychologist

Winston Hall ("Mr. Hall"), a psychologist, conducted various tests over two sessions on February 23 and 24, 2004, at Claimant's home. R. 541. Mr. Hall described Claimant as "extremely nervous and frustrated," with a dull affect and sullen mood. R. 543. Claimant expressed feelings of anger and maltreatment in his life. *Id.*

Mr. Hall administered the Wechsler Adult Intelligence Scale-III test to evaluate Claimant's intellectual abilities. R. 544. Claimant scored in the mild mental retardation range with an IQ of 66. *Id.* Mr. Hall noted Claimant had difficulty remembering digits and did poorly on the arithmetic subtest, both of which deal with attention and concentration. *Id.*

Mr. Hall also found Claimant's academic achievement levels in reading and arithmetic minimal for daily living purposes, with scores in the illiteracy range. R. 545. On the Bender-Gestalt test, Claimant had difficulty making drawings, which indicated possible mild brain damage. *Id*. Mr. Hall noted Claimant chose not to draw some of the designs. R. 546. Claimant's performance on the Trail Making Test indicated moderate brain damage. *Id*. Mr. Hall also found Claimant exhibited severe depression on the Beck Depression Scale. *Id*.

Mr. Hall concluded Claimant was functioning within the "mild mentally retarded range of intellectual ability." R. 547. Mr. Hall determined Claimant would most likely have problems operating in the workplace due to his physical and mental impairments. *Id*. The final diagnosis was of major depressive disorder and mild mental retardation. *Id*.

**D.    ALJ Cropper's Decision - February 1, 2007**

After three hearings and a remand from the Appeals Council, the ALJ determined Claimant has the physical RFC to perform and sustain most sedentary work, and a reduced range of light work, and the mental RFC to perform and sustain simple, repetitive unskilled work. R. 81-82. The ALJ evaluated Claimant's application under the required five-step analysis. R. 36-86. At step one, the ALJ found Claimant had not performed substantial gainful activity during the relevant time period. R. 37. At step two, the ALJ determined Claimant had severe physical impairments of decreased range of motion in his left wrist and decreased left hand grip, degenerative changes of his lumbar spine, low back pain, and obesity. R. 37-38. The ALJ determined the record did not clearly establish that Claimant currently or previously suffered from a severe mental impairment. R. 39.

At step three, the ALJ found Claimant's musculoskeletal impairments, considered

separately and in combination, did not meet or medically equal the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 during the relevant time period. R. 52-54. Further, the ALJ found Claimant's "alleged mental impairment of depression" did not impose listing-level functional limitations. R. 64. The ALJ noted that Claimant said he received mental health treatment at the September 10, 2003 hearing, but his first documented visit was not until November 24, 2003. R. 56-58. The ALJ took into account Mr. Richard's assessments, in addition to the testing by Mr. Hall. R. 59. However, the ALJ found Claimant's statements to Mr. Hall were inconsistent with other reports in the record and made him "appear to be far more limited than does other evidence in the record." R. 62.

The ALJ also found Claimant did not meet the 12.05(c) listing for mental retardation because it requires that a claimant establish that he manifested adaptive functioning deficits before age 22. R. 64; *see* 20 C.F.R. 404, Subpt. P, App 1, § 12.05. ALJ Cropper noted Claimant testified he was not significantly limited before the 1987 motorcycle accident, although he did drop out of high school and testified he did poorly academically. R. 64. ALJ Cropper stated the school records did not show Claimant received special education services. *Id.* She further noted Claimant was mentally able to perform work before his accident, and had a relatively long period of work at a restaurant. *Id.* After reviewing the record, ALJ Cropper found Claimant does not suffer from a mental impairment, and stated the "treating social workers and/or consulting psychologists would have come to very different conclusions if they had access to all of the evidence and testimony of record." *Id.*

At step four, the ALJ determined Claimant had the physical RFC to perform and sustain most sedentary work, and a reduced range of light work. R. 82. The ALJ noted that

neither VE could accurately determine whether Claimant performed vocationally relevant work in the relevant time period.  R. 83.

ALJ Cropper considered the mental RFC from Mr. Richard and the report from Mr. Hall, but refused to give them controlling or significant weight.  R. 68-69.  ALJ Cropper found progress notes of counseling sessions directly contradicted opinions in the mental RFC, and she found Claimant made material omissions of fact when describing his daily and social activities and work history to Mr. Richard. R. 69.  The ALJ stated the timing of the counseling visits suggested they were sought in order to bolster Claimant's disability claim. *Id*.  ALJ Cropper also dismissed Mr. Hall's test results because they relied heavily on Claimant's self-reported history and limitations.  *Id*.  Because she found Claimant's "testimony and reports about his functional limitations and depression not to be credible," the ALJ did not rely on the mental RFC opinions.  *Id*.  In assessing Claimant's credibility, the ALJ felt Claimant attempted to present himself as far more limited than he is.  R. 78.

At step five, the ALJ concluded that based on Claimant's age, educational background, work experience, and physical and mental RFC, Claimant is capable of "making a successful adjustment to work that exists in significant numbers in the national economy." R. 86.  The ALJ found Claimant "not disabled" under the Social Security Act.  R. 86.

### E.    ALJ McGuire's Decision - August 7, 2008

ALJ Michael R. McGuire found Claimant was disabled as of February 12, 2007, the date he filed a subsequent application for SSI.  Cx. A at 1.  The ALJ evaluated Claimant's application under the required five-step analysis.  *Id.* at 3-6.  At step one, ALJ McGuire found Claimant had not engaged in substantial gainful activity since February 12, 2007.  *Id.* at 3.

At step two, ALJ McGuire determined Claimant had severe impairments of mental retardation, depression, and degenerative disc disease of the lumbar spine.  *Id.* at 3.  ALJ McGuire considered the psychological evaluations of February 23 and 24, 2004 by Mr. Richard and noted Claimant did not consider going back to school because "he was too dumb."  *Id.*  He also noted Claimant's I.Q. test scores in the mentally retarded range.  *Id.* Further, ALJ McGuire considered an April 19, 2007 psychological consultative examination report[4] in which Claimant said he attended special education classes in grammar school and his grades were in the C-F range.  *Id.* at 4.  Claimant also reported moderate depression at this visit.  *Id.*  The psychologist diagnosed Claimant with dysthymic disorder and pain disorder.  *Id.*

ALJ McGuire also considered a Psychiatric Review Technique Form that was dated May 2, 2007 and conducted by a state agency psychologist.[5]  *Id.*  The psychologist found Claimant severely impaired due to organic mental disorder and depression.  *Id.*  Claimant

---

[4]This record was not before ALJ Cropper and was not submitted to this Court.

[5]This record was not before ALJ Cropper and was not submitted to this Court.

14

reported a learning disability during the consultation. *Id.* In a mental RFC assessment, the psychologist determined Claimant could understand and remember well enough to engage in simple assignments and repetitive routine tasks. *Id.* The psychologist found Claimant had adequate though limited social skills. *Id.*

At step three, ALJ McGuire determined Claimant's mental retardation, depression, and degenerative disc disease of the lumbar spine met the criteria of section 12.05(c) of 20 C.F.R. 404, Subpt. P, App. 1. *Id.* at 5. ALJ McGuire considered Claimant's statements about special education in grammar school and found it reasonable that the mental retardation discovered in the 2004 psychological testing was present before Claimant reached age 21. *Id.* ALJ McGuire considered the mental retardation in combination with Claimant's severe depression and lumbar disc disease in order to find Claimant met the listing requirements. *Id.* In conclusion, ALJ McGuire found Claimant disabled under the Social Security Act and eligible for benefits from February 12, 2007. *Id.*

## II. LEGAL STANDARDS

### A. Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied

the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-

40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a listed impairment; 4) whether the claimant can perform past relevant work; and 5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in support of his motion: (1) whether new and material evidence in the form of a subsequent award of benefits and accompanying mental health records establishes Claimant had disabling mental retardation that requires reversal

17

and remand; and (2) whether the ALJ committed reversible error in not calling a medical

expert to resolve inconsistencies in Claimant's mental health records.

**A.  New Mental Capacity Evidence Developed in the Subsequent Application Cannot Be The Basis For Reversal or Remand In This Case.**

There are two types of remands possible in Social Security cases under 42 U.S.C. §

405(g):

> Under sentence four, a district court may remand in conjunction with a judgment affirming, modifying, or reversing the Commissioner's decision. Under sentence six, the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the Secretary's decision, but only if the claimant shows good cause for failing to present the evidence earlier.

42 U.S.C. § 405(g); *Young v. Sullivan*, 972 F.2d 830, 833 (7th Cir. 1992).  Claimant's

counsel stated during oral argument that Claimant is alternatively seeking remand under

either sentence four or sentence six.  As explained further below, neither sentence four nor

sentence six permits remand in this case for the purposes of providing new evidence.

**1.  Claimant's new evidence is not grounds for remand under sentence four of 42 U.S.C. § 405(g).**

Claimant argues that this Court should consider ALJ McGuire's August 7, 2008

decision that Claimant had medically determinable impairments satisfying 12.05(c) of the

listings, along with the new evidence on which ALJ McGuire relied, because it was before

the Appeals Council after Claimant's request for reconsideration of ALJ Cropper's decision.

Generally, however, any evidence not before the ALJ cannot be considered by the

district court as a basis for a sentence four remand, even if it was before the Appeals Council.

If the Appeals Council grants a request for review and issues a decision on the merits, then a reviewing court can consider new evidence submitted to the Appeals Council but not considered by the ALJ. *Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993); *Eads v. Secretary of Dep't of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993). However, when the Appeals Council has simply denied review, the district court is limited to the evidence considered in the ALJ's original opinion in determining reversible error. *Id*; *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1992). This Court does not have the authority to review the Appeals Council's denial of a request for review. *Damato*, 945 F.2d at 988-89.

In this case, the Appeals Council denied review of ALJ Cropper's February 1, 2007 decision. R. 7-9. This made ALJ Cropper's decision the Commissioner's final administrative decision, and this Court's review focuses only on that determination when deciding whether it was supported by substantial evidence. ALJ McGuire's decision and the new evidence on which he relied were not before ALJ Cropper and cannot be considered by this Court for the purposes of a sentence four remand.

## 2. Claimant's new evidence is not grounds for remand under sentence six of 42 U.S.C. § 405(g).

Claimant alternatively requests this Court to remand the case under sentence six and order the Commissioner to consider additional evidence. A sentence six remand is appropriate when the claimant has new and material evidence that he had good cause for failing to submit at the administrative level. *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). Claimant requests that the Court remand the case back to the Commissioner to consider the following pieces of evidence that he asserts are new and material: ALJ McGuire's decision of August 7, 2008, the April 19, 2007 psychological Consultative Expert's report ("CE report"), and the May 2, 2007 state agency Psychiatric Review Technique Form ("PRTF").

As an initial matter, the Court is unable to determine whether the 2007 CE report and PRTF constitute new and material evidence, as Claimant did not submit them for consideration. The Court does note that, going by ALJ McGuire's review of these reports, Claimant was unlikely to establish that they constitute substantive evidence in addition to that already available in the record. Rather, they appear to show that Claimant's I.Q. score is in the mentally retarded range and that he suffers from depression, factors ALJ Cropper did consider. Moreover, Claimant has not offered any good cause for his failure to seek out and submit these reports earlier. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (automatically allowing a claimant to add new evidence following the ALJ's decision "would seriously undermine the regularity of the administrative process").

Claimant further argues that the decision itself from ALJ McGuire constitutes new and material evidence that necessitates a remand. Essentially, he argues the Commissioner cannot stand by two different conclusions as to whether he met the 12.05(c) listing.

While this Circuit has not spoken directly to this issue, the Sixth Circuit held in an instructional case that a subsequent ALJ's decision awarding benefits cannot, on its own, be used as new and material evidence to overturn a previous denial by another ALJ. *See Allen v. Commissioner of Social Security*, 561 F.3d 646, 652-54 (6th Cir. 2009); *see also Gardner v. Astrue*, 2009 WL 2605272 *4 (C.D. Ill. 2009). The *Allen* court held that the subsequent determination, beginning the day after an initial decision denying benefits, did not warrant a remand of the initial benefits denial. *Allen*, 561 F.3d at 652-53. Reasoning that it would be overly broad to read "new evidence" in sentence six of 42 U.S.C. § 405(g) to include a subsequent decision, the court noted that the legislative history of this section shows Congress' intent to limit remands for "new evidence" in Social Security cases. *Id.* at 653.

Claimant relies on *Petersen v. Chater* to argue that the inconsistent ALJ opinions are grounds for remand in the Seventh Circuit. 96 F.3d 1015, 1016 (7th Cir. 1996). However, *Peterson* involved conflicting statements within a single ALJ's opinion, not different opinions by two ALJs for two distinct benefit periods. *Id.* The court there held the ALJ's finding that the claimant could do sedentary work could not be reconciled with his other finding that the claimant was not capable of prolonged sitting, standing or walking. *Id.* at 1016. Here, two different ALJs were operating within the "zone of choice" giving latitude to an ALJ so long as her opinion is reasonably supported. *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001). The Court acknowledges that it is incongruous for two ALJs to issue differing opinions as to whether a claimant meets the listing for mental retardation. However, simply because the evidence may support two different conclusions is not in itself cause for remand. *Id.* at 772. Thus, Claimant has not offered any new and material evidence that would necessitate remand under sentence six.

**B.     The ALJ Was Not Required to Consult a Medical Expert at the Post-Remand Hearing.**

Claimant alternatively argues for remand on the basis that the ALJ failed to obtain an expert to resolve the inconsistencies in the medical and psychological evidence, which Claimant contends she should have done after the Appeals Council remand. The Appeals Council remanded the case back to the ALJ on July 22, 2005 specifically because "the Administrative Law Judge's findings regarding the claimant's mental impairments are unclear and in any case do not appear to be supported by substantial evidence . . . ." R. 247. Claimant argues the ALJ should have retained a psychological expert at the 2006 hearing and/or sent Claimant out for a consultative examination pursuant to 20 C.F.R. § 416.919a(b) (providing the SSA may purchase a consultative exam when "a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source").

This Court will uphold ALJ Cropper's decision so long as substantial evidence in the record supports it. 42 U.S.C. § 405(g). Unless required to develop an inadequate record or resolve ambiguities, the decision to call a medical expert and/or order a consultative

examination is within the ALJ's discretion. 20 C.F.R. § 416.919a; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Griffith v. Callahan*, 138 F.3d 1150, 1153 (7th Cir. 1999) (overruled on other grounds). An ALJ does have a duty to solicit information from the treating physician when needed to clarify the medical reports. *Barnett v. Barnhart*, 381 F.3d 664, 669-70 (7th Cir. 2004).

Here, Claimant had an IQ score of 66. R. 544. In order to meet 12.05(c) listing criteria, Claimant must therefore show he was mentally retarded before age 22 and has a physical or other mental impairment imposing an additional significant work-related limitation of function. 20 C.F.R. 404, Subpt. P, App 1, § 12.05; *Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006).

After remand of her first decision, ALJ Cropper allowed Claimant to submit additional evidence of his alleged mental impairments, including his own testimony. R. 908-09, 949. The ALJ considered high school records that did not show Claimant received special education services, despite his "poor academic achievement." R. 61, 64. The ALJ noted Claimant's failure to allege mental disability in his 1991 disability application and in interviews with claims representatives. R. 58. The ALJ considered that Claimant conducts daily activities including driving and socializing without difficulty concentrating and without memory problems. *Id*. The ALJ also considered that Claimant was able to perform work for multiple employers before his accident, demonstrating he was able to function in the workplace for years despite alleged cognitive problems dating back to his youth. R. 64.

The ALJ considered Mr. Richard's assessment that Claimant had a major depressive mood disorder. R. 58. The ALJ also considered the examination by Mr. Hall, who found

Claimant was depressed with intelligence scores in the mildly mentally retarded range. R. 60. However, ALJ Cropper found progress notes of Mr. Richard's counseling sessions did not support his mental RFC. R. 69. She also considered that many of the findings by Mr. Hall were based on statements made by Claimant that were inconsistent with other evidence and appeared exaggerated. R. 62. She concluded that "the treating social workers and/or consulting psychologists would have come to very different conclusions if they had access to all the evidence and testimony of record." R. 64.

While the ALJ could have exercised her discretion to consult a medical expert or ordered a consultative exam, nothing in the record indicates she was required to do so. The ALJ considered the testing and opinions conducted by Mr. Richard and Mr. Hall, but determined they were not supported by the evidence. She also considered school records Claimant submitted that did not establish he received special education services, as well as his own testimony, but found his reports not to be credible as they were unsupported by other evidence. There is no indication that an inadequate or ambiguous record led to the ALJ's inability to make a fully-informed decision. Thus, it was entirely within her discretion not to consult outside experts at the post-remand hearing.

Furthermore, the Appeals Council had the opportunity to determine whether the ALJ followed their instructions to reconsider Claimant's mental impairments when Claimant appealed the ALJ's 2007 decision. By denying review, they found no reversible error in the ALJ's final decision. The ALJ sufficiently complied with the Appeals Council's instructions, and her decision is supported by substantial evidence. Therefore, her failure to consult a

psychological expert is not grounds for a remand.

## IV. CONCLUSION

For the reasons set forth in this opinion, Court affirms the ALJ's decision, denies

Claimant's request for reversal or remand, and grants the Commissioner's motion for

summary judgment.

SO ORDERED THIS 1st DAY OF JUNE, 2010.

*Morton Denlow*

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to**:

Carolyn M. Burns
Law Office of Carolyn M. Burns
1550 W. 88th St.
Suite 302
Chicago, Illinois 60620

Counsel for Claimant

Jonathan C. Haile
U.S. Attorney's Office
219 S. Dearborn Street
Suite 500
Chicago, Illinois 60604

Carole J. Kohn
Assistant Regional Counsel
200 W. Adams Street
Suite 3000
Chicago, Illinois 60606

Counsel for Defendant